UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NELLA LONGARI S.R.L.,

                              Plaintiff,                                07 CV 8484 (VM)
    -against-

SALANDER-O'REILLY GALLERIES LLC and
LAWRENCE SALANDER

                              Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW

      Plaintiff, Nella Longari S.r.L. ("Plaintiff"), submits this Memorandum of Law in support of its motion (1) for an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), temporarily and preliminarily enjoining Defendants Salander-O'Reilly Galleries LLC ("Salander-O'Reilly") and Lawrence Salander ("Mr. Salander") ("Salander-O'Reilly and Mr. Salander are collectively referred to as "Defendants"), and all those acting in concert with them, from taking any action to transfer, dispose of, encumber, or otherwise reduce or jeopardize their interest in certain property which is subject to the underlying action (the "Artworks," as defined below), and which is identified in Schedule A to the Order to Show Cause, and to enjoin Defendants from using any proceeds from sale of any of the Artworks; and (2) for an order that Defendants provide Plaintiff with an accounting of the sold Artworks and information on the location of the unsold Artworks.

      The present application is made in order to preserve the status quo and prevent the subjects of the action from being dissipated. The relief sought will, if granted, prevent Defendants from transferring, encumbering or impairing the Artworks.

## STATEMENT OF FACTS

A full statement of the facts is provided in the declarations of Mario Longari and Francesco Di Pietro and in the Verified Amended Complaint, on which this motion is made and to which this Honorable Court is respectfully referred. A brief description of the facts follows.

Plaintiff sold "on consignment" and delivered to Salander-O'Reilly the Artworks, which consist of pieces of European artwork from the 14th and 16th centuries, for a total price of 775,000 Euros (the equivalent of approximately $1,100,000, as of today's exchange rate). The Artworks are of unique character and "one of a kind." (Longari Decl., 3)

Salander-O'Reilly received and accepted the Artworks. Salander-O'Reilly was to sell the Artworks on behalf of Plaintiff. Salander-O'Reilly was offered, in the alternative, the option to purchase any or all of the Artworks upon payment of the respective price. The parties agreed that Plaintiff would retain ownership title to the Artworks until payment to Plaintiff, if any, at which point in time ownership title would pass. (Longari Decl., 3, 4)

Thereafter, Salander-O'Reilly indicated that it intended to keep some of the Artworks and promised to pay their respective price. Plaintiff invoiced Salander-O'Reilly but did not receive payment. Salander-O'Reilly has not protested or objected to Plaintiff's invoice. (Longari Decl., 6) Given the delay in paying, on numerous occasions Plaintiff attempted to contact Salander-O'Reilly but was not able to reach them. Finally, distressed and frustrated by the lack of response by Salander-O'Reilly, after numerous attempts, in early December 2006, Plaintiff was able to get in touch by telephone with Mr. Salander, the president of Salander-O'Reilly. Plaintiff confronted Mr. Salander and informed him that since potential buyers had offered to buy the Artworks, Plaintiff needed to obtain the Artworks immediately, unless payment was made by him immediately. Plaintiff indicated that it was willing to go to New York and take the Artworks. (Longari Decl., 7)

2

In order to stop Plaintiff from taking the Artworks, Salander-O'Reilly, in the person of Mr. Salander, issued checks 1420, 1421, 1422, 1423 and 1424, each in the amount of $90,000, drawn upon the First Republic Bank and payable to Plaintiff, in partial payment of the Artworks. The checks bear the following dates: December 15, 2006, January 15, February 15, March 15 and April 15, 2007. The five (5) checks total $450,000. (Longari Decl., 8)

Mr. Salander indicated that Plaintiff could deposit the checks on or after the dates indicated on the face of each check. Relying on the checks and the assurances of Mr. Salander, Plaintiff deposited the checks. On January 4, 2007, Plaintiff was informed by the bank that payment on check 1420 had been stopped. The other four checks were also retuned unpaid due to insufficient funds. (Longari Decl., 11)

Mr. Salander also indicated that the balance (775,000 Euros minus $450,000) would be paid when Salander-O'Reilly sold the Artworks which it did not purchase with the checks, otherwise the unsold Artworks would be returned to Plaintiff. Plaintiff then learned, through its investigation and not through Defendants, that at least one Artwork was sold by Salander-O'Reilly, on March 18, 2007, but Salander-O'Reilly has failed to pay Plaintiff, notwithstanding Plaintiff's numerous demands for payment. (Longari Decl., 9)

On October 2, 2007, Plaintiff was ready to file an Order to Show Cause why Defendants should be enjoined from selling or disposing of 3 Artworks which, Plaintiff discovered, Defendants intended to sell at a Sotheby's auction on October 3, 2007. (Longari Decl., 17)

After suit was filed against Defendants and Plaintiff threatened Defendants with an order to show cause why a preliminary injunction should be issued to enjoin Defendants from selling the Artworks at the October 3 auction, on October 2, 2007, Antonette Favuzza ("Favuzza"), the C.E.O. of Salander-O'Reilly, contacted Plaintiff's attorney and beg him not to file the Order to Show Cause. In return, Favuzza offered to forward to Plaintiff the sale proceeds of the Artworks or, if unsold, to return the Artworks to Plaintiff. The parties' stipulation was "so ordered" by this

3

Honorable Court. (Longari Decl., 18; Di Pietro Decl., 5) At the October 3 auction, two of the three Artworks were sold. The proceeds of the sale of the two Artworks are still in the custody of Sotheby's, which was served with a copy of the order. Plaintiff and Sotheby's are in the process of arranging for transfer to Plaintiff of the proceeds ($3,500). (Longari Decl., 19; Di Pietro Decl., 6) The unsold Artwork was delivered by Sotheby's to Plaintiff. (Di Pietro Decl, 6) Said proceeds ($3,500) cover only a small portion of Defendants' debt to Plaintiff. The Artworks which defendants sold for $3,500 are worth 25,000 Euro (approximately $35,000 as of today's exchange rate). (Longari Decl., 20) The unsold Artwork is worth 100,000 Euro (approximately $140,000 as of today's exchange rate). Defendants were willing to sell this Artwork for a price of $40,000 to $60,000. (Longari Decl., 21)

In addition to the three Artworks subject to the October 3 auction, there are approximately fifteen additional Artworks which are the subject of this motion.

Defendants' dire financial status, greed and need for a "quick buck" caused, and still cause, Defendants to sell valuable pieces of art for a fraction of their value especially since they have no intention to pay the rightful owners of the pieces. For Defendants, whatever money they receive is money in their pocket without regard to the rights of the rightful owners. (Longari Decl., 22) This is why pieces that are worth approximately $35,000 were sold for $2,500 and the Artwork that is worth approximately $140,000 was listed at $40,000 - $60,000.

Soon after the October 3 auction, Plaintiff's attorney and Favuzza agreed to meet in order to account for what Defendants sold and what is still with Defendants. However, Defendants have been at large since. Plaintiff's undersigned attorney has tried to contact Defendants and Favuzza but they do not pick up the phone and do not return calls. It would be fruitless to go to the gallery: on October 2, 2007, Plaintiff's undersigned attorney went to the gallery to meet with either Mr. Salander or Favuzza (or both), to no avail. He was informed by the gallery's reception

4

that both Mr. Salander and Favuzza were busy and not willing to see him. Plaintiff's undersigned attorney had to leave the gallery. (Longari Decl., 23; Di Pietro Decl., 8)

Additionally, Favuzza had promised to make an inventory of the Artworks still with the Defendants and, ultimately, return the Artworks to Plaintiff and pay for the sold Artworks. (Di Pietro Decl., 7) Given Favuzza's (and Defendants') lack of communication with Plaintiff and its attorney, it seems that Defendants have or are in the process of selling, absconding, encumbering or transferring the unsold Artworks. (Longari Decl., 26) At the very least, the lack of communication seems to prove that, once again, Defendants are not to be trusted.

On October 9, 2007, the New York Post had an article on Defendants. The article reflects that Defendants owe money to several creditors and for reasons similar to the ones at issue in the instant suit. It is Defendants' modus operandi to obtain artworks by fraudulent representations as to payments and high returns, keep the artworks, keep whatever sales proceeds and refuse to pay the rightful owners of the artworks. According to said article, Defendants were organizing an art show starting on October 17, 2007, which would be the last show; thereafter, Defendants will close the gallery. (Longari Decl., 24) This week, Plaintiff's attorney learned that apparently Judge Lowe III of the New York Supreme Court granted an injunction to prevent the sale of artworks located at the Defendants' gallery. Therefore, it seems that the art show will not go forward. (Di Pietro Decl., 10)

Given this history and Defendants' modus operandi, if they sell the Artworks, whether at the art show or elsewhere, and then they close, Plaintiff will not see any penny of the sales proceeds. This has been Defendants' pattern. (Longari Decl., 25) The Artworks are unique and one of a kind. Several of Plaintiff's customers are interested in purchasing the Artworks. If they are sold or transferred by Defendants, Plaintiff will suffer irreparable damages. Besides, Defendants have no money and no intention to pay. (Longari Decl., 27) There is also the risk

that Defendants abscond, transfer or encumber the unsold Artworks. This is what they allegedly did in the case of Davis v. Salander-O'Reilly et al, 07 Civ 4165.

In the past couple of years alone, Defendants have been sued at least 15 times for failing to pay. There are multimillion dollar judgments pending against Defendants. (Longari Decl., 16; Di Pietro Decl., 9) Defendants are in the habit of writing checks, promissory notes and other security documents which are later on dishonored by them. Defendants have been dissipating assets. They have also used assets belonging to others, including Plaintiff, to pay personal and/or unrelated debts.

Plaintiff has attempted to reach the Defendants on numerous occasions in an effort to find an amicable solution to this matter before the filing of the instant motion. Notwithstanding Plaintiff's numerous attempts, none of Plaintiff's calls or emails were returned from the Defendants.

As more fully demonstrated below, Plaintiff's motion seeking an order for a preliminary injunction and for an expedited discovery should be granted.

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO THE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

A party seeking a preliminary injunction must establish (1) irreparable harm, (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits, and (3) a balance of hardships tipping decidedly in its favor. Forest City Daly Housing, Inc. v. North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).

*Irreparable Harm*

A clear showing of a threat of irreparable harm is essential to justify a preliminary injunction. The threatened irreparable harm must be actual and imminent, not remote or speculative. Cedar Swamp Holdings, Inc. v. Zaman, 472 F. Supp.2d 591, 595 (SDNY 2007).

Irreparable harm is found "where, but for the grant of equitable relief, there is a

6

substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." Brenntag Int'l Chemicals, Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999). Moreover, "preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible." The Republic of the Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir. 1986); see also Alvenus Shipping Co., Ltd. v. Delta Petroleum (U.S.A.) Ltd., 876 F. Supp. 482, 487 (SDNY 1994) (irreparable harm is present where nothing in the record suggests that defendant could pay plaintiff's likely future award); Seide v. Crest Color, Inc., 835 F. Supp. 732, 735 (SDNY 1993) (granting a preliminary injunction preventing defendant from selling assets where the plaintiff likely would be unable to collect on a judgment if assets were sold).

It is also well-established that irreparable harm is demonstrated, and a plaintiff is entitled to a preliminary injunction freezing a defendant's assets, where evidence suggests that a party is likely to take steps to frustrate a judgment on the merits. See In re Feit & Drexler, Inc., 760 F. 2d 406, 416 (2d Cir. 1985); Gelfand v. Stone, 727 F. Supp. 98, 100 (S.D.N.Y. 1989); Daye Nonferrous Metals Co. v. Trafigura Beheer B.V., 1997 U.S. Dist. LEXIS 9661 (SDNY July 7, 1997), vacated in part on other grounds, 152 F.3d 917 (2d Cir. 1998). In determining whether a defendant is likely to frustrate a judgment, "courts have considered both evidence of past fraudulent activity as well as evidence of efforts to move assets out of a given jurisdiction." Daye Nonferrous Metals, at *14; Gelfand, at 100-01; see also Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 87 (2d Cir. 1996).

Defendants acquired the very properties that are the subject of the requested injunction through a fraudulent transaction – this alone is sufficient to establish that Plaintiffs' face likely irreparable harm if Defendants are not enjoined from further transfers of the properties. See Daye Nonferrous Metals, at *14 (finding evidence that the defendant was likely to frustrate a judgment based, *inter alia*, on fraudulent intent displayed by defendant in connection with

7

underlying shipping transactions); Bank of Crete v. Koskotas, 1988 U.S. Dist. LEXIS 14199 (SDNY Dec. 19, 1088) (granting preliminary judgment where "in light of defendants' prior conduct," consisting of wrongful misappropriation of hundreds of millions of dollars from plaintiffs, "all assets held in defendants' names need to be frozen to prevent dissipation of that property.").

The Artworks at issue in this case are unique, irreplaceable, important works of art. Cf. Pagliai v. Del Re, 2000 U.S. Dist. LEXIS 744, at *1 (SDNY Jan. 31, 2000) (finding that paintings are works of art that are "unique and irreplaceable"). This factor alone is sufficient to meet the standard provided by the law. But here there is more.

Plaintiff already has been irreparably harmed by Defendants' dissipation of his Artworks. Sources other than Defendants revealed to Plaintiff that Defendants sold at least one Artwork without telling Plaintiff, let alone paying. It is still unclear how many other Artworks were sold by Defendants.

Without the intervention of this Court, Plaintiff irreparably will lose more of his unique Artworks. Defendants have neither returned nor accounted for the fifteen Artworks. Nor have Defendants provided any sales records. All Artworks which were not sold by Defendants must be returned to Plaintiff.

Given Defendants' repeated actions in disregard of Plaintiff's rights, there is every reason to believe that Defendants will continue to dissipate Plaintiff's Artworks absent an injunction from this Court. See Wesselmann v. Int'l Images, 169 Misc. 2d 476, 482 (Sup. Ct. 1996) (mandatory injunction granted under similar New York standard where plaintiff demonstrated it was likely that art works in question were plaintiff's property, and defendant was selling those art works and keeping proceeds).

Plaintiff will be further irreparably harmed by Defendants' dissipation of his sales proceeds. Despite Defendants' promises and obligation to hold the proceeds from sales of the

8

Artworks and to return the unsold Artworks, and despite Defendants' admissions that they owe Plaintiff money, Defendants have not paid any of the 775,000 Euro to Plaintiff or returned the unsold Artworks. In light of Defendants' admission that they have "a liquidity crisis," that the October 17 show is their last show and that after the show they will close the gallery, there is an enormous risk that, absent an injunction, the sales proceeds will be dissipated and the Artworks absconded, transferred or encumbered. See Horizon Mktg. v. Kingdom Int'l Ltd., 244 F. Supp.2d 131, 140 (EDNY 2003) (irreparable harm existed where there was risk that trustee would continue to dissipate trust funds without paying entity for which funds were held in trust, potentially "leaving the [trust beneficiary] out of luck and out of money."); Castle Creek Tech. Partners v. Cellpoint Inc., 2002 U.S. Dist. LEXIS 23760, at *4 (SDNY Dec. 9, 2002) (ordering delivery of stock shares because defendant was "at the brink of insolvency" and there was an "actual and imminent threat" that defendant would be unable to turn over the shares or otherwise satisfy the judgment); Demolition Workers Union v. Mackroyce Contracting Corp., 2000 U.S. Dist. LEXIS 3548, at *9 (SDNY March 22, 2000) (defendant's apparently precarious financial condition and substantial danger that disputed funds may not be collectable, *inter alia*, were grounds for finding irreparable harm and issuing preliminary injunction requiring amount in dispute to be paid to court registry). See also Wesselmann, 169 Misc.2d at 482 (granting a preliminary injunction because "[i]f [defendant] continues [selling the art] it would render ineffectual the judgment compelling the return of the [a]rt. It also appears that [defendants] may be unable to pay a judgment in plaintiffs' favor.")

The Artworks are property of the Plaintiff. The Artworks were obtained and/or kept through a fraudulent conduct. Defendants have been elusive. Defendants have already absconded Artworks. The Artworks which are the subject of this action and preliminary injunction are unique and "one of a kind" European artworks from the 14th and 16th centuries. If Defendants sell the Artworks, Plaintiff will lose valuable assets which are unique and "one of a

9

kind." Likely, the proceeds of the sale will be absconded by Defendants, as it happened with the Artwork Defendants sold and with the consideration Defendants received. Defendants appear not to be able to satisfy a monetary judgment against them. There are numerous suits pending against Defendants. Defendants will close the gallery after their last show. Plaintiff may never be able to recover for its loss. Moreover, there are multimillion dollar lawsuits and judgment against Defendants. Defendants may not be able to satisfy a monetary judgment against them.

The irreparable harm is actual and imminent. Defendant has <u>already</u> absconded the Artworks. Plaintiff has continuously inquired about the whereabouts of the Artworks but no answer was given by Defendant. It is unclear which Artworks were sold by Defendant. At least one of Plaintiff's Artworks was secretly sold by Defendant. After numerous promises made by Defendants to Plaintiff in the past two weeks that they would meet with Plaintiff's undersigned attorney and to submit an accounting of the Artworks sold and the ones still with Defendants, Defendants have been extremely elusive. They have not responded to or returned any of Plaintiff's attorney's numerous calls.

A preliminary injunction should be granted where the "totality of the circumstances indicate clearly that [a defendant's] past predilection for deceptive and fraudulent practices is likely to continue." <u>Gelfand</u>, at 101. Here, the evidence of Defendants' fraudulent conduct directed towards Plaintiff, as well as Defendants' continued improper activities following discovery of the fraud, demonstrate the likelihood that their fraudulent practices will continue in the future. For all of the reasons discussed above, Plaintiff has demonstrated that it is likely to suffer irreparable harm in the absence of a preliminary injunction, and the requested injunction should be granted.

<u>Likelihood of Success on the Merits</u>

Plaintiff sold "on consignment" and delivered to defendant Salander-O'Reilly Galleries the Artworks. Salander-O'Reilly received and accepted the Artworks. Salander-O'Reilly was to

10

sell the Artworks on behalf of Plaintiff. Salander-O'Reilly was offered, in the alternative, the option to purchase any or all of the Artworks upon payment of the respective price. The parties agreed that Plaintiff would retain ownership title to the Artworks until payment to Plaintiff, if any, at which point in time ownership title would pass. Thereafter, Salander-O'Reilly indicated that it intended to keep some Artworks and promised to pay their respective price. Plaintiff invoiced Salander-O'Reilly but did not receive payment. Salander-O'Reilly has not protested or objected to Plaintiff's invoice. Instead, Salander-O'Reilly issued 5 checks (1420, 1421, 1422, 1423 and 1424) to Plaintiff totaling $450,000. Plaintiff deposited check 1420 and it was informed by the bank that payment on check 1420 had been stopped by Defendants; Plaintiff also deposited the remaining 4 checks, which were also returned unpaid due to insufficient funds.

On October 2, 2007, Defendants also offered to return to Plaintiff 3 Artworks and/or whatever proceeds they would get for the sale of them at the October 3 auction. The foregoing is further evidence that the Artworks belong to Plaintiff and that Defendants have no right whatsoever to the Artworks.

Even if Plaintiff could not demonstrate a likelihood of success on the merits -- which he has -- an injunction nonetheless should issue because, at the very least, sufficiently serious questions exist and the balance of hardships decidedly tips in favor of Plaintiff. As demonstrated above, Defendants have no legitimate right, title or interest in the Artworks or their sales proceeds.

By reason of the foregoing, Plaintiff will easily succeed on the merits in this action.

*Balance of Hardship*

The balance of hardships tips decidedly in Plaintiff's favor. If the Artworks are sold to third parties, Plaintiff will lose unique artworks which cannot be replaced. It is very likely that if the Artworks are sold, Defendants will not pay the Plaintiff. Defendants may not be able to satisfy a monetary judgment against them. Defendants, on the other hand, have little or nothing

to lose since they do not own the Artworks and they have no right to the Artworks. Defendants therefore will not suffer any hardship should they be prevented from continuing to sell the Artworks, from using the sales proceeds for their own purposes, or from continuing to use the Artworks as collateral for their own debts. See B.U.S.A. Corp. v. Ecogloves, Inc., 2006 U.S. Dist. LEXIS 85988, at *7 (SDNY Jan. 31, 2006) (finding that balance of hardships favored plaintiff since injunction would prevent defendants from engaging in conduct "which they cannot do regardless of the injunction"). In contrast, if the preliminary injunction is not issued, Plaintiff will continue to lose his unique, irreplaceable works of art and the possibility of compensation for its losses. The hardships at issue here therefore are entirely one-sided favoring a preliminary injunction.

Plaintiff has satisfied all of the requirements of Rule 65 FRCP. By reason of the foregoing, the relief sought must be granted. Accordingly, Plaintiff respectfully submits that this Court should issue a preliminary injunction: (1) enjoining Defendants from (a) selling or otherwise disposing of or encumbering any of Plaintiff's Artworks, and (b) using any proceeds from sales of those Artworks for Defendants' own purposes; and (2) mandating that Defendants (a) retrieve and deliver to Plaintiff all unsold Artworks, (b) segregate in a separate bank account and deliver to Plaintiff all proceeds that Defendant's already have received from sales of Plaintiff's Artworks; and (c) segregate in a separate bank account and deliver to Plaintiff immediately upon receipt all incoming installment payments that constitute proceeds from prior sales of Plaintiff's Artworks.

## II.     PLAINTIFF IS ENTITLED TO AN ACCOUNTING

Plaintiff has attempted to find out the location of its Artworks and whether the Defendants had sold any of the Artworks. Notwithstanding Plaintiff's numerous demands, Defendants have not provided answers to the Plaintiff. To date, Plaintiff has no precise idea of where its Artworks are.

In the past week alone, Plaintiff has attempted to reach out to Defendants in an effort to find an amicable solution to this matter. However, none of Plaintiff's calls and emails were returned. Defendants have avoided Plaintiff and their counsel.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully submits that this Court should issue a preliminary injunction enjoining Defendants from selling or otherwise disposing of or encumbering any of Plaintiff's Artworks and from using any proceeds from sales of those Artworks for Defendants' own purposes; and order Defendants to account for the Artworks.

Dated: October 30, 2007

                                                  Wuersch & Gering, LLP
                                                  Attorneys for Plaintiff

By: _____
      Francesco DiPietro (FD 6383)
      100 Wall Street
      New York, New York 10005
      (212) 509-5050
      Our File: 11019-2