UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NELLA LONGARI S.R.L.,

                              Plaintiff,

       -against-

SALANDER-O'REILLY GALLERIES LLC and
LAWRENCE SALANDER

                            Defendants.
-----------------------------------------------------------------X

## DECLARATION

Pursuant to U.S.C. 28 § 1746, Mario Longari declares as follows:

1.     I am an officer of the Plaintiff, Nella Longari S.r.L. I make this affidavit in support of Plaintiff' Motion for an Order to Show Cause on the basis of facts which are within my personal knowledge and to which I would otherwise be competent to testify at trial.

2.     Plaintiff, an Italian business entity, is an art dealer and gallery located at v. Bigli, 15, Milan, Italy.

3.     In 2005, I was approached by Defendants Salander-O'Reilly Galleries LLC ("Salander-O'Reilly"), in the person of Lawrence Salander ("Mr. Salander"), which intended to purchase artwork from us. We sold "on consignment" and delivered to Salander-O'Reilly certain pieces of European artwork (the "Artworks").[1] The total value and price of the Artworks is 775,000 Euros (the equivalent of approximately $1,100,000, as of today's exchange rate). The Artworks are of unique character and "one of a kind" since they are originals from various historical periods, including the 14th and 16th centuries.

1

4. Salander-O'Reilly received and accepted the Artworks.

5. We retained ownership title of the Artworks. Salander-O'Reilly was to sell the Artworks on our behalf. We offered, in the alternative, to Salander-O'Reilly the option to purchase any or all of the Artworks upon payment of the respective purchase price. The parties agreed that title to the Artworks would pass to Salander-O'Reilly upon payment to us.

6. Thereafter, Salander-O'Reilly indicated that it intended to keep some Artworks and promised to pay their respective purchase price. We invoiced Salander-O'Reilly but did not receive payment. Salander-O'Reilly has not protested or objected to our invoices; therefore, we stated an account to Salander-O'Reilly. It is unclear how many Artworks were sold by Salander-O'Reilly; for sure there is at least one Artwork which was sold at an auction on March 18, 2007, for the price of 74,400 Euro (approximately $104,000 as of today's exchange rate). This sale was never disclosed by defendants to us.

7. Given the delay in paying, on numerous occasions we attempted to contact Salander-O'Reilly but were not able to reach them. Finally, distressed and frustrated by the lack of response by Salander-O'Reilly, after several attempts, I was able to get in touch, by telephone, with Salander-O'Reilly in early December 2006. I confronted Mr. Salander, the president of Salander-O'Reilly, and informed him that since potential buyers had offered to buy the Artworks, we needed to obtain the Artworks immediately, unless payment was made by him immediately. We indicated that we were willing to go take the Artworks immediately.

---

[1] The Artworks are listed and described in Schedule A to the Order to Show Cause.

8. In order to stop us from taking the Artworks, Salander-O'Reilly, in the person of Mr. Salander, issued checks 1420, 1421, 1422, 1423 and 1424, each in the amount of $90,000, drawn upon the First Republic Bank and payable to us, in partial payment of the Artworks. The checks bear the following dates: December 15, 2008, January 15, February 15, March 15 and April 15, 2007. The five (5) checks total $450,000.

9. Mr. Salander indicated that we could deposit the checks on or after the dates indicated on the face of each check. He also indicated that the balance (775,000 Euros minus $450,000) would be paid when Salander-O'Reilly sold the Artworks which it did not purchase with the checks, otherwise the unsold Artworks would be returned. I then learned that at least one Artwork was sold by Salander-O'Reilly, as more fully set forth at paragraph 6 above, but Salander-O'Reilly has failed to pay us, notwithstanding our numerous demands for payment.

10. Mr. Salander was able to convince me, with great effort on his part, to accept the checks which would definitely be paid upon deposit and dismissed me after presenting vague excuses for the delay and assuring and reassuring me that payment would be made in full even, but not only, with regard to the remaining Artworks he may sell. I was satisfied that I received the five checks and left the Artworks to them.

11. Thereafter, relying on the checks and the assurances of Mr. Salander, I deposited the checks. On January 4, 2007, I was informed by the bank that payment on check 1420 had been stopped. The front side of check 1420 shows the words "PAYMENT STOPPED." The back side of check 1420 shows the words "ENDORSEMENT CANCELLED." Thereafter, even the other four checks were retuned

unpaid. (Annexed hereto as **Exhibit A** are copies of the front and back side of the checks)

12. We have demanded payment of 775,000 Euros to the defendants on numerous occasions. Notwithstanding our numerous demands for payment, to date this amount remains outstanding and overdue.

13. By reason of the foregoing, Nella Longari has suffered damages in the amount of 775,000 Euros.

14. There are, and cannot be, no counterclaims by defendants since there is no basis for any counterclaims, as evidenced by the checks and the refusal to return the Artworks.

15. Salander-O'Reilly is a private concern owned and controlled by Mr. Salander. I do not know if Salander-O'Reilly has any income or assets now. I do know, upon information and belief, that its liabilities exceed its assets. (Annexed hereto as **Exhibit B** is a printout from a website specializing in art which reflects the fact that defendants have many liabilities)

16. Nella Longari has filed a Verified Complaint and a Verified Amended Complaint against defendants. (A true and accurate copy of the Verified Amended Complaint is attached hereto as **Exhibit C**)

17. On October 2, 2007, Nella Longari was ready to file an Order to Show Cause why defendants should be enjoined from selling or disposing of certain Artworks which defendants intended to sell at a Sotheby's auction on October 3, 2007.

18. After having served with the Order to Show Cause, and relevant papers, Antonette Favuzza ("Favuzza"), the C.E.O. of Salander-O'Reilly, contacted our attorney,

4

Francesco Di Pietro, and beg him not to file the Order to Show Cause. In return, Favuzza offered to pay to us the sale proceeds of the auction or, if unsold, to return the Artworks to us. The parties' stipulation was "so ordered" by this Honorable Court.

19. The proceeds and one of the Artworks, which did not sell at the auction, are still in the custody of Sotheby's. Our attorney served Sotheby's with a copy of the order. We and Sotheby's are in the process of arranging for transfer to us of the proceeds and the Artwork.

20. However, the proceeds ($3,500) cover only a small portion of defendants' debt to us. The Artworks which defendants sold for $3,500 are worth approximately 25,000 Euro (approximately $35,000 as of today's exchange rate).

21. The unsold Artwork which we are in the process of (apparently) receiving from Sotheby's is worth approximately 100,000 Euro (approximately $140,000 as of today's exchange rate). However, defendants were willing to sell this Artwork for a price of $40,000 to $60,000.

22. Obviously, defendants' dire financial status, greed and need for a "quick buck" cause defendants to sell valuable pieces of art for a fraction of their value especially since they have no intention to pay the rightful owners of the pieces. For defendants, whatever money they receive is money in their pocket without regard to the rights of the rightful owners.

23. After the October 3 auction, our attorney and Favuzza agreed to meet in order to account for what defendants sold and what is still with defendants. However, since then defendants have been at large. Our attorney has tried to contact defendants and Favuzza but they do not pick up the phone and do not return calls. It would be

fruitless to go to the gallery: our attorney went to the gallery to meet with either Mr. Salander or Favuzza (or both), to no avail. The gallery's reception informed our attorney that both Mr. Salander and Favuzza were busy and not willing to see him. Our attorney had to leave the gallery.

24.     On October 9, 2007, the New York Post had an article on defendants. This article reflects that defendants owe money to several creditors and for reasons similar to the ones at issue in the instant suit. It is defendants' modus operandi to obtain artworks by fraudulent representations as to payments and high returns, keep the artworks, keep whatever sales proceeds and refuse to pay the rightful owners of the artworks. According to said article, defendants are organizing an art show starting on October 17, 2007. Likely, the Artworks (and other artworks) will be sold during the show. Apparently, this will be the last show. Thereafter, defendants will close the gallery. (Annexed hereto as **Exhibit D** is a copy of the article)

25.     Given this history and defendants' modus operandi, if they sell the Artworks and then they close, we will not see any penny of the sales proceeds. This has been the pattern with us and, apparently, with other which do business with defendants.

26.     Additionally, Favuzza had promised to make an inventory of the Artworks still with the defendants and, ultimately, return the Artworks to us. Given Favuzza's lack of communication with us and with our attorney, it seems that defendants have or are in the process of selling (whether during the show or elsewhere), absconding, encumbering or transferring the unsold Artworks.

27.     The Artworks are unique and one of a kind. Several of our customers are interested in purchasing the Artworks. If they are sold or transferred by defendants, we

6

will suffer irreparable damages. Besides, defendants have no money and no intention to pay us.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Milan, Italy, on October 24, 2007

Mario Longari

7