



Login | Forums
Prices Database | Search Stories
Price of the Day | Subscribe

Free Sample | Ad Rates
FTP Ads | Catalogs
Search Archives | Home

**Search Our Advertisers**


Leonards New England Antique Beds & Fine Antique Furniture Our Specialty Since 1933!


Search Upcoming Lots at the World's Top Auction Houses


Claude and Sharon Baker Antiques


McClellan Elms Antiques


Direct link to Greenwillow Farm


Ames Hill Antiques


The Antique and Artisan Center


Kuttner AntiquesAmericana


Lisa S. McAllister


John Roth American Antiques

MacKay & Field Antiques

# Lawsuits and Charges of Unpaid Consignment Sales Trouble Salander-O'Reilly Galleries

## Lawsuits and Charges of Unpaid Consignment Sales Trouble Salander-O'Reilly Galleries

by David Hewett

The art world buzz over the Berry-Hill Galleries bankruptcy has quieted now that it's been almost a full year and a half since the initial Chapter 11 filing. All of the necessary loans to pay off creditors have been granted, and the legal and accounting firms representing the varied groups involved in shepherding the reorganized Berry-Hill through the requisite stages have posted their final bills to the bankruptcy court. (Those bills amount to over $6.5 million, by the way, in case you were wondering what it costs for a major New York City art gallery to go through a Chapter 11 proceeding.)

During that time, when the matter was fresh in everyone's mind, when revelations of questionable bidding at auction and stories about paintings left for evaluation that turned into consignments without the knowledge of their owners were prevalent, it was not that pleasant to be a gallery owner in the Big Apple. One of those individuals, during a phone conversation, summed up the matter succinctly: "Nobody wants to leave their stuff with a gallery without getting a UCC filing first. It's made painting owners very nervous and distrustful about all of us."

There's a new art gallery-related story making the rounds in Gotham now, according to a Los Angeles collector, and it's raising more than a few eyebrows of normally jaded art-world aficionados. "Everybody knows about it," said Los Angeles attorney and art collector Maurice Katz. "After thirty years of happy relations with him, it's over. And he still owes me over thirty-two thousand!"

The "him" is Lawrence Salander of Salander-O'Reilly Galleries, one of the more improbable figures to be involved in problematic art dealings. To quote the introduction given him at the first annual Hedge Funds vs. Malaria leadership conference in September 2005, "Lawrence Salander is President of Salander-O'Reilly Galleries in New York, named best gallery in the world by the 2003 Robb Report. He has been a member of the prestigious Art Dealers Association of America for over twenty years, as well as the Art and Antique Dealers League of America (CINOA), and the Appraisers Association of America. Salander is the first private art dealer to sit on the Board of the National Indemnity Project of the National Endowment for the Humanities. His writing has appeared in *The New Republic*, *The New Criterion* and *Arts Magazine*, and his paintings have been the subject of nine solo and ten group exhibitions."

Salander is the quintessential New Yorker, an artist/art dealer/art collector and critic. The coauthor of *Exploring Late Turner* (1999) and author of *Walt Kuhn (1877-1949): The Landscapes* (1987), Salander is also a talented artist; his 96" x 42" oil on canvas from 1992, *Crucifixion*, is in the Smithsonian's collection, a gift from Charles Simon.

He has devoted time to various charities; the 2005 conference cited above fought malaria in Africa. Unlike some fair-weather friends, Salander has actually gone there and also written and spoken about the problem of worldwide hunger. He was born in New York City in 1949 and still lives there, with his wife, Julie. He is the father of seven children. His Salander-O'Reilly Galleries is among the top-ranked art galleries in New York, which gives it an international standing, and it is very active at that level.

In July 2002, Salander-O'Reilly senior vice-president Andrew Butterfield cast the winning bid on an armless 32" high terra-cotta figure of a muscular Moor at a Sotheby's sale in London. The figure, attributed to Gian Lorenzo Bernini, had been estimated at $250,000, but Butterfield paid $3.24 million to get it for the firm, bidding against an international cast of art firms (see M.A.D., February 2003, p. 20-B).

They went abroad for stock again, in 2006, as *SalvoNews* of November 2, 2006, noted: "Christie's auction of the stock of Mike Roberts' Architectural Emporium in Kent, England, in September 2004 raised an unexpectedly large total, buoyed up by enthusiastic bidding from abroad. It now seems that much of it has ended up at the world's newest plush salvage and antique architectural and garden ornament showroom, the newly created Salander Decorative Arts in New York. Lawrence Salander, fourth generation dealer, is a significant figure in the top end of the trade. Salander O'Reilly sells antique and modern flat art and sculpture, representing living artists, estates, and sponsoring museum-quality exhibitions and books."

When *Art + Auction* published its list of the most influential people in the 2005 art world in its December 2005 issue, Lawrence Salander was on it and described as "the non-conformist." The reasoning for that

**Shows & Auctions**

Complete Show & Auction Calendar

(Auction) **Uncle Tom's American Country Antiques Online Auctions**

(Auction) **Garth's Auction Gallery** (Pensacola, FL)

(Auction) **Auction Productions** (Humboldt, AZ)

(Auction) **Garth's** (Delaware, OH)

(Auction) **Early American History Auctions** (Online-Absentee)

(Auction) **AuctionZip.com** (Find Auctions Anywhere)

(Show) **Chicago Antique Market** (Chicago, IL)

(Auction) **Cowan's Auctions, Inc.** (Cincinnati, OH)

(Auction) **MV Auctions** (Hyannis, MA)

(Auction) **Rafael Osona** (Nantucket, MA)

(Auction) **Swann Galleries** (New York, NY)
Sep 20, Oct 4, Oct 11, Oct 15, Oct 25, Oct 31

(Show) **Marburger Farm Antique Show** (Round Top, TX)
Oct 2, Oct 3, Oct 4, Oct 5, Oct 6

(Show) **The Original Round Top Antiques Fair** (Round Top, TX)
Oct 3, Oct 4, Oct 5, Oct 6

(Auction) **Kaminski Auctions** (Los Angeles, CA & Danvers, MA)
Oct 3, Oct 20, Oct 21

(Auction) **Salmo Sporting Collectibles, LLC, Antique & Classic Fishing & Hunting Collectibles** (Chadds Ford, PA)
Oct 5, Oct 6

(Auction) **Heritage Music and Entertainment Memorabilia Auction** (Dallas, TX)
Oct 6, Oct 7

(Auction) **Skinner European Furniture & Decorative Arts at Auction** (Boston, MA)
Oct 6

(Show) **14th Annual Okemo Antiques Show** (Ludlow, VT)
Oct 6

(Auction) **Main Auction Galleries, Inc.** (Cincinnati, OH)
Oct 7

(Show) **41st Shenandoah Antiques Expo** (Fishersville, VA)
Oct 12, Oct 13, Oct 14

(Auction) **Heritage Fine & Decorative Arts Auction: The Crow Art Partnership Collection** (Dallas, TX)
Oct 13

(Auction) **Willis Henry Shaker Auction** (Pittsfield, MA)
Oct 14

(Auction) **Bonhams & Butterfields SoMa Estate Auction** (San Francisco, CA)
Oct 14, Oct 15

(Auction) **Robert L. Foster Estates Auction** (Newcastle, ME)
Oct 14


Linda Rosen Antiques


Antiques & Collectibles on Ruby Lane!


Vintage Sign Company


Halsey Munson Americana


Kaller Historical Documents, Inc.


Frank & Barbara Pollack


Heritage Square Antique Mall


Prices 4 Antiques


Direct link to John R. Snedden Ltd.


Fisher Heritage


Direct link to RJG Antiques


Austin T. Miller American Antiques


David Nassar Antiques

Spencer Marks Fine Antique Silver

observation came from Salander's devotion to Gothic, Baroque, and Renaissance works of art, in contrast to the tastes of other galleries for newer styles. Salander assembled around 200 examples of his preferences in the newly rehabbed Beaux Arts mansion on East 71st Street that opened in September 2005 (see *Art + Auction*, December 2005).

But for all the positive publicity, he is facing several problems at present, problems that do not shine a favorable light on his business practices. Lawrence Salander has been named a defendant in three art-related lawsuits (not counting the unpleasantness with attorney Maurice Katz). In April he was slapped with a preliminary injunction limiting his purchases to only the barest necessities. He could not make any new art acquisitions without the permission of a former client and had to deposit all sales funds in a specified bank account. (Katz is not one of those currently suing Salander. When asked about going to the courts to collect what he says is due him, he had this to say: "Sue Larry [Salander]? Not me! I'm a lawyer, remember?")

Maurice Katz and his wife are art collectors and have published a catalog of their holdings. In May 2006, Katz consigned a circa 1920 oil by artist Alfred Maurer, *Landscape*, to the Salander-O'Reilly Galleries. As he stated in a letter to Salander associate Steven Harvey, the instructions were to "sell it on our behalf, with a minimum net to us of $125,000." Steven Harvey acknowledged the consignment and terms on May 5, 2006.

Nothing appears to have happened until early in February 2007, when Katz said he got a phone call from someone who was offered the Maurer and asked if he (Katz) had sold it. Lawrence Salander, responding to Katz's questions about where the Maurer painting was, answered via e-mail: "I have the painting out at a client's home and will have an answer for you by the end of next week. I love the picture and would be happy to extend a credit to you of equal value should it not sell."

Katz e-mailed Salander back and thanked him for the offer, but noted, "The only reason we are selling the Maurer painting is that we have no place to hang it, and it has been in storage in a closet. Accordingly, we do not need to acquire another painting at this time."

When Katz went to New York and tried to pick up the painting, he said he was told by Salander-O'Reilly personnel, "We don't know where it is." He returned to Los Angeles and demanded a check for the $125,000, by the end of Monday, February 19, in a demand sent via Federal Express Special Handling.

Katz threatened to serve Salander with a lawsuit and notify the New York City police, the Art Dealers Association of America, and the New York State Attorney General if he were not paid. On February 20 Salander acknowledged the sale in a fax, "As you know the Maurer was sold. We expect the first payment the first week in March of $12,500 and the balance to be paid within thirty days thereafter."

Katz was having none of that. He wrote back to Salander, "I made certain telephonic inquiries and have officially ascertained that you transferred possession of our Maurer oil painting over three weeks ago (probably during the last week of January 2007) to a third party, whose name is known to me. I have also ascertained that this person paid you the sum of $120,000 in cash...and is not obligated to pay you any further monies for this transaction."

Katz admits he was very angry at that point. He demanded the "minimum net of $125,000 to the consignor" that the consignment agreement specified. Payment could be in the form of a cashier's check or wire transfer. The next day, February 21, Salander faxed Katz back, "Pay you $62,500 in two payments. This is a complicated business."

A check for $62,500 did eventually arrive, dated March 5, and "even though there were non-sufficient funds in the account," Katz wrote in a March 8 letter to Antoinette Saufavuzza, CFO of Salander-O'Reilly Gallery, "First Republic Bank negotiated the Galleries' check for $62,500."

No other payments were forthcoming until May 24, when Katz got a check for $10,000. "I received a painting by Ralston Crawford, of a supposed value of $20,000, for a total payment of $92,500. Salander still owes me $32,500," Maurice Katz stated in a letter dated June 14.

-The Dougall Arts Suit

Why was a large art firm with the reputation of Salander-O'Reilly stressed for funds during the first half of 2007? Were there other more pressing problems for the company in this period?

Salander-O'Reilly Galleries was indeed facing one very big demand on May 9, 2007, when Judge William H. Pauley III of the U.S. District Court for the Southern District of New York entered a judgment that Dougall Arts Ltd. could recover €497,144.31 (approximately $665,860 in U.S. funds) from Salander-O'Reilly. And this matter, like the business with Maurice Katz, involved missed payments on material that was already sold.

Dougall Arts Ltd. is a United Kingdom arts firm with principal offices in London. On March 1, 2004, Salander-O'Reilly bought a large terra-cotta sculpture of St. Jerome from Dougall Arts for an agreed upon price of €850,000, to be paid in three installments.

The sculpture was attributed to 16th-century Italian sculptor Girolamo Campagna by art consultant and historian Dr. Charles Avery. (Somewhat complicating the issue is that the sculpture had previously been attributed to another sculptor, and after the sale it was reattributed by Salander to yet another artist.)

The first payment of €400,000 was executed by wire transfer to the London office. No further payments were made, despite all efforts by Dougall to force Salander-O'Reilly to make the payments. Follow-up letters were sent in August, September, and October 2004 to Lawrence Salander from Dougall Arts attorney Jorge Loaiza after the second installment was missed. Those letters went unanswered.

At the Maastricht art fair in March 2004, Salander had asked $4,000,000 for the sculpture, Dougall Arts alleges. Salander was also alleged to have rejected an offer of $2,000,000 at the 2004 fair and another offer of $1,250,000 made in September 2004.

On June 3, 2005, Dougall Arts Ltd. entered its suit against Salander-O'Reilly Galleries. Attorneys for Dougall stated that according to an invoice to Mr. Murray Frum, a Canadian businessman well known for collecting African art, Salander had sold the sculpture to him for $850,000 on January 3, 2005.

Attorneys for Salander argued that the person offering the sculpture when Salander first saw it at an art fair falsely stated it was fresh to the market and supplied an incorrect provenance and attribution, thus the Dougall contract was invalid.

(Auction) Skinner Discovery Auction (Bolton, MA)
Oct 18, Oct 19

(Show) Historic Yellow Springs Antiques Show (Chester Springs, PA)
Oct 19, Oct 20, Oct 21

(Auction) Philip Weiss Auctions (Oceanside, NY)
Oct 20

(Auction) Skinner Asian Works of Art at Auction (Boston, MA)
Oct 20

(Auction) Kimball Sterling Antique Cane Auction (Johnson City, TN)
Oct 20

(Auction) Whiteside Auctions On-Site Antiques Auction (Elkins Park, PA)
Oct 20

(Auction) Kimball M. Sterling Fall Antique Cane Auction (Full Free Catalog) (Johnson City, TN)
Oct 20

(Show) California Country Antique American Country & Folk Art Show (Los Altos, CA)
Oct 21

(Show) M.A.R.I.A.B. 3rd Annual Pioneer Valley Book & Ephemera Fair (Northampton, MA)
Oct 21

(Show) New Oxford, PA, One-Day Antique Show (New Oxford, PA)
Oct 21

(Show) The Fall Hartford Antiques Show (Hartford, CT)
Oct 21, Oct 22

(Auction) Auction House Heinze & Co. Rare and Important Books, Photographs & Autographs (Toronto, Ontario, Canada)
Oct 23

(Auction) John Moran Antique & Fine Art Auctioneers California & American Paintings (Pasadena, CA)
Oct 23

(Auction) Time & Again Auction Gallery Antique Estate Auctions (Linden, NJ)
Oct 23, Oct 28

(Show) Tailgate Antiques Show & Music Valley Antiques Market (Nashville, TN)
Oct 24, Oct 25, Oct 26, Oct 27

(Show) The San Francisco Fall Antiques Show (San Francisco, CA)
Oct 25, Oct 26, Oct 27, Oct 28

(Auction) Daniel Auction Company 27th Antique Advertising Auction (Sylvester, GA)
Oct 26, Oct 27

(Show) Minneapolis Institute of Arts 24th Annual Antiques Show & Sale (Minneapolis, MN)
Oct 26, Oct 27, Oct 28

(Auction) Northeast Auctions - Important New Hampshire Weekend Auction (Manchester, NH)
Oct 26, Oct 27, Oct 28

(Auction) Pook & Pook Inc. Auction (Downingtown, PA)
Oct 26

(Auction) Bonhams & Butterfields Fine European and American Furniture, Decorative Arts... Auction (San Francisco, CA)
Oct 29

(Auction) Lang's Sporting Collectables Auction (Boxborough, MA)
Nov 2, Nov 3

(Show) Lowery Enterprises Antiques & Design Show & Sale (Verona, NY)
Nov 3, Nov 4

(Auction) O'Leary Antiques Auction (Needham, MA)
Nov 3


Raccoon Creek Antiques, L.L.C.


Cherry Brook Woodworks


Direct Link to www.cyberattic.com


Direct link to David H. Horst Antiques


Direct link to Nancy Steinbock Vintage Posters


Oh.


Antique Associates at West Townsend


Silvermine Antiques


Direct link to Jenkinstown Antiques


Barbara Ardizone Antiques


The Halliday House Antiques Barn


The Annual Berks County Art Show, Greshville Antiques


Direct link to Tangibles

Wakefield-Scearce Galleries

---

The judgment delivered by Judge William H. Pauley III on May 9 found that the amount due to Dougall Arts Ltd. was €497,144.34. Since both parties had entered into a stipulated settlement providing monthly payments to Dougall before a verdict could be delivered, the case was discontinued, but the court did rule that if Salander-O'Reilly defaulted on any monthly payment before the next one was due, then the entire remaining payments plus interest would become due.

-The Davis Suit

The newest suit in the works was filed only on May 29, 2007. Plaintiff Earl Davis filed suit against Lawrence Salander and Salander-O'Reilly Galleries for "not less than millions of dollars" each for five claims, and asked for an accounting and the return of various art properties. Earl Davis is the son of noted American artist Stuart Davis (1894-1964).

When Stuart Davis died in 1964 there were hundreds of works of art remaining in his estate. Son Earl Davis and Lawrence Salander "have had a business and trust relationship for many years," Davis stated in his complaint. Earl Davis gave Salander-O'Reilly many works of art "for evaluation and possible sale." According to his suit, he did not give Salander open-ended authority to sell whatever he brought him.

Earl Davis said the works "have an incalculable personal and emotional significance to [him]", and he "made it clear to the Defendants that, although he delivered to SOR [Salander-O'Reilly] for sale consideration hundreds of the works of art that had been created by his father, he did not want all of the works of art to be sold."

Earl Davis maintained he also wanted to be involved in any discussions about potential prices for his father's work. Davis said they agreed on the commissions to be earned by Salander-O'Reilly. For paintings, 20% of sales proceeds up to $1 million and 10% for sales proceeds in excess of $1 million. For works of art on paper, 30% of sales proceeds up to $20,000 and 20% of sales proceeds in excess of $20,000.

Earl Davis said that he asked for a full accounting and inventory in 2005. "After many months, Defendants eventually provided a list of the items of Property and the purported locations of each," the suit claims. Two years later, Davis subsequently learned, he states, that "solely as a result of his own initiatives, that dozens of items of Property had been sold without Defendants informing or consulting Plaintiff and without any payment being made to Plaintiff, and also learned that, according to Defendants, other items of Property may be 'lost.'"

In December 2005 and during the spring of 2006, Earl Davis said he told Salander to cease selling his property, return it to him, and pay for the material sold. Salander-O'Reilly failed to do that, Davis states.

Earl Davis also claims that in 2006 he was "induced" by Salander to enter into two sales arrangements of 13 paintings for a total $2,900,000. He claims he has never been paid any of that amount.

Davis is suing Salander under the New York Art and Cultural Affairs Law, claiming breach of contract, fraudulent inducement to contract, breach of fiduciary duty, and conversion, and seeking an accounting and recovery of chattels.

On July 3, attorneys for Earl Davis filed a flurry of papers in the Court. They claim that Lawrence Salander has "withheld from Plaintiff at least $9,378,875 of Plaintiff's trust funds" and that 43 paintings are unaccounted for.

Salander-O'Reilly has yet to answer any of these charges as of the date of this report. We spoke with Lawrence Salander on June 26. He called the charges just "a meaningless squabble" and said that Earl Davis "is one of my closest friends."

-The Lane Suit

The last suit against the Salander-O'Reilly Galleries and Lawrence Salander involves a very large sum. The suit was filed in U.S. District Court, Central Division of Massachusetts, by collector Saundra B. Lane. It involves an oil on canvas painting by Charles Sheeler titled *Newhaven* that Lane sold Lawrence Salander for $9,173,261.

Lane is a collector of vintage photography and a generous collector too. Her gifts to various institutions have included Ansel Adams's works to the Museum of Fine Arts, Boston and, in 2005, "The Master Sets," a total of 1465 gelatin silver prints by the influential American New Topographics movement photographer Robert Adams (b. 1937, no relation to Ansel Adams) given to the Yale University Art Gallery.

On April 1, 2005, Lawrence Salander signed a quite simple one-page five-item bill of sale as buyer. He also signed a not-quite-so-simple four-page promissory note on the same date, agreeing to 5% interest per year on the unpaid balance of the $9,173,261 note.

He also agreed to an 11-payment schedule beginning on June 30, 2005, and ending on January 31, 2007, with ten payments ranging between $250,770 and $672,310, with the final January 2007 payment ballooning to $4,884,900. Altogether Salander was to pay a total of $9,807,980 for a $9,173,261 painting, if the schedule was kept.

Salander could prepay down the note and agreed, if late with payments, to pay a late charge. As collateral, he pledged five items: the Sheeler *Newhaven* painting; a Michelangelo Buonarroti bronze sculpture, *River God*; a Benvenuto Cellini brown ink on paper, *Motto Study*; an oil on canvas by Albert Pinkham Ryder, *Windmill*; and a pair of oils on panel by James Abbott McNeill Whistler, *Seascape, Dieppe*.

Saundra Lane employed very efficient attorneys who drew up explicit promissory note conditions, guaranty details, and security agreement terms. Defaulting on the note meant the entire unpaid principal and all charges were due immediately. The UCC security agreement was filed with Massachusetts authorities. Upon default, Lane was authorized to enter any premises where the collateral was kept and remove it. A public sale of the collateral could then be conducted upon 15 days' notice to Salander. It appears Lane's lawyers were meticulous in drawing up the portfolio of terms and conditions of sale.

On February 28, 2006, the list of collateral was amended to consist of the Sheeler *Newhaven*, the Ryder *Windmill*, and the pair of Whistler oils on panel, but the Buonarroti bronze and the Cellini ink on paper were removed. In their place were substituted Théodore Géricault's *The Flemish Farrier*, a Ryder oil on leather, *Toilers of the Sea*, and another Ryder, an oil on canvas, *Witch's Mountain*.

---

(Auction) Past Tyme Pleasures Absentee Advertising Auction (San Ramon, CA) Nov 3

(Auction) Bertoia Auctions Happy Holiday Sale (Vineland, NJ) Nov 9, Nov 10, Nov 11

(Auction) Stanton's Auctioneers and Realtors Annual Fall Music Machine Auction (Charlotte, MI) Nov 16, Nov 17

(Show) Syracuse Thanksgiving Antique Show (Syracuse, NY) Nov 24, Nov 25

(Auction) Bonhams American Paintings Auction (New York, NY) Nov 28

(Auction) Bonhams & Butterfields California and American Paintings and Sculpture Auction (Los Angeles and San Francisco, CA) Dec 10


Leatherwood Antiques - Animal, Whimsical & Unusual Antiques


Direct link to Helen Warren Spector Antiques


Classified Ads


Dan and Kathy Roe Antiques


Thurston Nichols American Antiques, LLC


American Federal Furniture


Home Farm Antiques


Jan Whitlock Textiles & Interiors


Direct link to Christine Gardner Antiques


The Cobbs, Auctioneers


Direct link to Mustard Seed Antiques


Charles L. Flint Antiques, Inc.


Dan Freeburg Antiques


Direct link to burlsnuf.com/S. Scott Powers Antiques

On August 22, Saundra B. Lane signed a verified complaint, and it was filed in U.S. District Court, District of Massachusetts, on the next day. Lane's verified complaint is quite explicit in describing the reasons for filing the charges.

"Salander failed timely to make the installment payment due March 31, 2006 in the amount of $672,310" (he subsequently paid $600,000 of that payment, though). "Salander has also failed to make the installment payments due June 30, 2006 and July 31, 2006...Salander has acknowledged his obligations under the Promissory Note and promised to make the overdue payment, but has failed to do so."

On that day, August 23, her attorneys filed a motion for a preliminary injunction. It asked the court to order Lawrence Salander to deliver or make available to Lane the Sheeler and the six other works of art.

Evidently both parties decided that there was room for compromise, and on December 12, 2006, Salander and Lane jointly asked the court to continue the scheduling for further actions to January 4, 2007, because "the parties have been engaged in settlement discussion for some time and believe that they are close to resolving this matter by agreement."

They may have believed that at that date, but by March 28, 2007, they were further apart than ever. On that date, attorneys for Saundra Lane asked Judge F. Dennis Saylor IV to issue a temporary restraining order and renewed their motion for a preliminary injunction. What had changed?

Lane had agreed to an amendment and allonge to the promissory note that had set a new schedule for payments (an allonge is an attachment to a promissory note when the original has no room for additional information). Unfortunately, her attorneys alleged, "Salander and the gallery failed to make full and timely payments under the Amendment and Allonge." Moreover, Salander and the gallery "have also failed to make available all the Collateral for appraisal. Lane retained O'Toole-Ewald Art Associates, Inc., to appraise the Collateral. To date, Defendants have produced for appraisal only two of the seven works encumbered by the Security Agreement—Albert Pinkham Ryder's *Witch's Mountain* and *Toilers of the Sea*."

On March 28, 2007, Dr. Elin Lake Ewald described in her affidavit what happened when she went to examine the paintings.

"On the morning set for inspection, none of the six paintings could be located at the Gallery...." Lawrence Salander then told her that two of the Ryders were at his personal residence. "After a search with Salander-O'Reilly staff members, [we] were able to locate, examine, and photograph the two works.

"I requested Certificates of Authenticity for these two paintings viewed at the Salander residence from Ms. Elizabeth Broun, Director of the Smithsonian American Art Museum and the leading expert on the artist. Ms. Broun declined to provide such Certificates, rendering the sale of the paintings difficult, if not impossible, to achieve on the open market.

"At this time, I must consider the paintings as only 'attributed' to Ryder, not having been authenticated as being by the hand of the artist," Dr. Ewald wrote.

In her March 28 memorandum stating why a temporary restraining order and preliminary injunction on Salander were necessary, Saundra Lane noted that Salander "could not make the first payment timely, bounced a check for another payment, requested further concessions in the payment schedule, and then simply failed to make the February 28, 2007 payment. Moreover, the Defendants were able to produce for appraisal only two of Lane's seven pieces of Collateral. As to those pieces, it appears they have little or no value, not the $3,500,000 value that Salander claimed they had just a few weeks ago."

On April 13, Judge Saylor ordered a preliminary injunction served on Lawrence Salander and the Salander-O'Reilly Galleries, ordering them to deposit all sales proceeds and/or other revenues into their regular business bank accounts. They could not remove any funds from that account without "express written permission of plaintiff Sandra [sic] B. Lane or her counsel," except for normal and ordinary business debts and expenses, rent, taxes, or payment of preexisting written obligations.

The defendants "are hereby ordered to make available to Plaintiff Sandra [sic] B. Lane within three days of the Court's order...the collateral described in the security agreement...as amended February 26, 2006...."

Lawrence Salander and his attorneys petitioned the court on May 24 to modify the injunction, because, they stated, "a dispute has arisen between the parties as to the interpretation and scope of paragraph 2 of the Preliminary Injunction."

It seems that when Lane, her appraisers, and possibly also her attorneys came to Salander's office to examine the collateral, Salander's attorney requested that she arrange for insured storage of it and that no further action be taken without their agreement or court order.

As Salander's attorneys stated in their motion to modify on May 24, Saundra Lane "apparently contends that there has been an Event of Default, as defined in the Security Agreement and the underlying Promissory Note...as amended by the Amendment and Allonge...then she may proceed without further action against the collateral." In other words, Lane intended to do just what the agreement allowed after a default—take the collateral and sell it.

Salander's attorneys asked the court to modify the injunction by adding the following sentence: "The plaintiff shall not take action against the collateral, whether by sale or otherwise, absent agreement of the parties or Court order."

Lane's attorneys began their opposition to the motion to modify with a compelling sentence in the argument section: "Litigants do not get to pick and choose the orders with which they will comply."

They argued that Salander had admitted he has defaulted; in the October 3, 2006, allonge, they quoted his (or his attorney's) phrase "certain *Events of Default have occurred* [our emphasis] under Section 6 (b) of the Note." They state that under the Massachusetts law concerning UCC filing, "Lane Need Not Seek Court Approval" to take action against the collateral.

On Friday, June 22, Judge F. Dennis Saylor IV denied Salander's motion to modify and ruled that Saundra Lane "may take possession of the collateral...." Judge Saylor offered no opinion on what conditions "must be satisfied before plaintiff may dispose of the collateral...."


Charles F. Breuel Antiques


Gary John Gresl


Faith Viland's Antiques


American Antiques Inc.


Direct link to Goodfaith Antiques


Showcase Antique Center


Direct link to David Pool Antiques


Charles Haver Antiques


Authentic Designs - Early American Lighting Fixtures


Northeast Auctions


Bernard & S. Dean Levy


Joshua Lowenfels


Direct link to Woody and Nancy Straub, Antiques and Art, Inc.

It looks as if the $9 million painting is headed back to its owner. When we asked Lawrence Salander about the decision, he passed it off with a simple, "Ms. Lane will do whatever she does; she's a fine person."

On June 25, Heather Repicky, one of the attorneys with the Boston firm Nutter McClennen & Fish, representing Saundra Lane, noted that because the case was ongoing, she could not comment on it. Asked about the last ruling, she did add, "We do not physically have the paintings in our hands at this date, but we are pleased with the judge's order and are hoping for a quick resolution of the matter."

And last, asked about whether he was having a cash flow problem, Lawrence Salander had a word of warning: "You have to be careful when you say things like that." We told him we were doing just that by asking him the question directly. He said, "The answer is no."

Login or Register to post a Comment



Login | Forums
Prices Database | Search Stories
Price of the Day | Subscribe
Free Sample | Ad Rates
FTP Ads | Catalogs
Search Archives | Home

**Gallery Advertisers**

Search Our Advertisers

Authentic Designs - Early American Lighting Fixtures

Direct link to David Wheatcroft

Home Farm Antiques

Raccoon Creek Antiques, L.L.C.

Olde Hope Antiques, Inc.

Gary John Gresl

Dan and Kathy Roe Antiques

Direct link to Primarily Primitives

Kuttner AntiquesAmericana

Direct link to The Splendid Peasant Ltd.

Direct link to Turkey Hill Antiques, LLC

# More Trouble for Salander-O'Reilly Galleries

On September 7 Salander-O'Reilly Galleries lost a big one. On that day in United States District Court in Massachusetts, a motion for summary judgment was granted in favor of Saundra Lane in her lawsuit against the New York City art firm and its owner Lawrence (Larry) Salander. The amount of the judgment is yet to be determined, but it's almost sure to be a multimillion-dollar award.

Saundra Lane had filed suit on August 23, 2006. The case revolved around missed payments for a Charles Sheeler painting, *Newhaven*. On April 1, 2005, Lane sold *Newhaven* to the Salander-O'Reilly Galleries for $9,173,261. Salander signed various promissory notes, guarantees, and security agreements and established a schedule for payments. A number of payment installments were missed, the schedule was rewritten, and payments lapsed again. In documents filed on July 25, 2007, it was alleged that Salander and the gallery owed roughly $3 million to Lane. Saundra Lane also claimed that the value of the collateral furnished by Salander was substantially below the value claimed.

Lane's attorneys complained that Salander refused to meet with them or supply the documents requested and approved by the court and asked the judge to consider a contempt of court ruling against Salander. On September 7, Judge F. Dennis Saylor IV ruled on Lane's motion for summary judgment in the manner described above.

The arguments against the motion included August 29 filings from Anthony Doniger, Salander's attorney. Doniger produced an affidavit from Antonette Favuzza, the chief financial officer of Salander-O'Reilly Galleries, stating that Lane's contention that Salander owed her a total of $3,420,322.35 in principal and interest on the $9 million purchase was erroneous. Using her calculations, Favuzza contended the actual debt was only $2,528,616.88. Anthony Doniger also alleged that Lane "now has in her possession four valuable paintings," so any judgment must reflect the value of the paintings, "lest the plaintiff receive a double recovery."

It took Saundra Lane less than 24 hours to rebut Doniger's arguments. As for the figure of $2,528,616.88 said owed by Salander, "This figure is incorrect," Lane stated. Some of the error came from payments credited to the wrong times, others were for checks written to Lane, but, as she wrote, "These checks did not clear and, therefore, provided no value or consideration to me." The true present total due, she stated, was $4,609,232.38, in principal and interest.

As for the four paintings given her as collateral, for the two works by Albert Pinkham Ryder, "the Appraisers have placed a value of only $45,000," she noted. And for two works possibly by James Abbott McNeill Whistler, "the Appraisers have determined the value of the pair of paintings to be an aggregate of only $3200. "Therefore, based on these appraisals, the total value of the Collateral is only $48,200."

Lane's attorneys are due to propose a judgment amount by September 15. An answer is due by Salander on September 21. The judge will rule shortly after the papers are filed.

—More Trouble

The discovery that additional complaints have been filed in New York Supreme Court against Salander-O'Reilly Galleries and its owner Lawrence Salander gave new impetus to the charges of an ongoing "liquidity crisis" at the world-ranked gallery as summer's end neared.

These "disputes between friends" focus attention on the claim of former friend and art consignor Earl Davis that Lawrence Salander was using his assets to pay the claims of others. Davis's attorney claims some $4 to $6 million has already been spent to settle such claims.

—John McEnroe

Among the New York Supreme Court filings was a claim from tennis great John McEnroe, alleging that Lawrence Salander failed to make good on an October 5, 2006, pledge to pay $325,000 to McEnroe on or before March 5, 2007.

McEnroe is no outsider to the art world. In 1994 the then 35-year-old semiretired tennis whiz opened a gallery in SoHo on the second floor of a loft building at 41 Greene Street. McEnroe wouldn't comment on the size of that investment in the art business when asked about it for a 1994 New York Times story but admitted it was substantial and would take him a few years to break even.

McEnroe's motion for summary judgment was filed on May 11. We attempted to discover how the $325,000 debt was contracted, but our calls were not returned.

—Monty and Sarah Diamond

The other filings include a complaint filed by Monty and Sarah Diamond, collectors who live in New York and Colorado. It alleges that in April 2006, Monty Diamond gave 16 works of art to Salander to assess and perhaps sell for the standard 10% commission. All prospective sales had to be vetted by Monty Diamond before actual selling, he maintained.

**Shows & Auctions**

Complete Show & Auction Calendar

(Auction) Garth's Auction Gallery (Pensacola, FL)

(Auction) MV Auctions (Hyannis, MA)

(Auction) Rafael Osona (Nantucket, MA)

(Show) Chicago Antique Market (Chicago, IL)

(Auction) Cowan's Auctions, Inc. (Cincinnati, OH)

(Auction) Garth's (Delaware, OH)

(Auction) AuctionZip.com (Find Auctions Anywhere)

(Auction) Early American History Auctions (Online-Absentee)

(Auction) Uncle Tom's American Country Antiques Online Auctions

(Auction) Auction Productions (Humboldt, AZ)

(Auction) Swann Galleries (New York, NY) Sep 20, Oct 4, Oct 11, Oct 15, Oct 25, Oct 31

(Show) Marburger Farm Antique Show (Round Top, TX) Oct 2, Oct 3, Oct 4, Oct 5, Oct 6

(Show) The Original Round Top Antiques Fair (Round Top, TX) Oct 3, Oct 4, Oct 5, Oct 6

(Auction) Kaminski Auctions (Los Angeles, CA & Danvers, MA) Oct 3, Oct 20, Oct 21

(Auction) Salmo Sporting Collectibles, LLC, Antique & Classic Fishing & Hunting Collectibles (Chadds Ford, PA) Oct 5, Oct 6

(Auction) Heritage Music and Entertainment Memorabilia Auction (Dallas, TX) Oct 6, Oct 7

(Auction) Skinner European Furniture & Decorative Arts at Auction (Boston, MA) Oct 6

(Show) 14th Annual Okemo Antiques Show (Ludlow, VT) Oct 6

(Auction) Main Auction Galleries, Inc. (Cincinnati, OH) Oct 7

(Show) 41st Shenandoah Antiques Expo (Fishersville, VA) Oct 12, Oct 13, Oct 14

(Auction) Heritage Fine & Decorative Arts Auction: The Crow Art Partnership Collection (Dallas, TX) Oct 13

(Auction) Willis Henry Shaker Auction (Pittsfield, MA) Oct 14

(Auction) Bonhams & Butterfields SoMa Estate Auction (San Francisco, CA) Oct 14, Oct 15

(Auction) Robert L. Foster Estates Auction (Newcastle, ME) Oct 14




Charles F. Breuel Antiques


Adrian Morris Antiques


Olde Hope Antiques, Inc.


Direct link to Christine Gardner Antiques


Direct link to RJG Antiques


American Federal Furniture


Direct link to Antique Associates at West Townsend


Quiet Corner Antiques


M. Finkel & Daughter, Antique Sampler Web Site


Kaller Historical Documents, Inc.


Antique & Coastal Properties


Classified Ads


Direct Link to www.cyberattic.com


Carlson & Stevenson

---

Monty Diamond claims he was told by Salander on August 23, 2006, that ten paintings had been sold, "without consent or authorization of the plaintiffs."

The total price realized by the ten paintings was $477,500. Monty Diamond said he was told by Salander, and in an effort to mitigate any complaints from the Diamonds, Salander agreed to waive his seller's commission. The payments for the Diamonds' art were to begin in January 2007, but none have been made through July of this year, they insist.

The Diamonds asked the court for judgment in their favor for the entire $477,500 with interest. Under other "Causes of Action," the total asked for various damages is just under $4 million.

—Elaine A. Rosenberg

Another legal action against Salander came from Elaine A. Rosenberg, who has several art-related businesses in New York City. She alleged that on May 25, 2005, she joined with Salander to "... purchase Stuart David's [sic] Brown Table Still Life, 1922, oil on canvas (the 'Painting') for the purchase price of $400,000." The agreement was that she would give $200,000 to Salander, who would put up the same amount. Salander told her he already had a buyer who was willing to pay $800,000 for it. She claims he told her she would receive $400,000 from the sale "on or before December 15, 2005."

"To date [filed January 31, 2007], neither the Galleries nor Salander has paid any portion of Rosenberg's share from the sale of the Painting—the amount of $400,000—to Plaintiff," she claimed. She asked for judgment in her favor of $400,000, plus interest and legal fees.

—Paul Rosenberg

Another Rosenberg also has a legal problem with Salander. Paul Rosenberg & Co. L.P., a Delaware limited partnership holding company, is the legal owner of the building on 20 East 79th Street where Salander-O'Reilly Galleries LLC leased the entire ground, second, and third floors, plus some of the basement, from April 1, 1989, through December 31, 2009 (the full term was available, if they so wished).

Besides agreeing to pay real estate taxes, maintenance, and utility costs, Salander agreed to pay $700,000 rent annually to Rosenberg & Co., or $58,333.34 per month. There was a later agreement that allowed for a base rent price plus costs for deferral months, and that set up schedules for figuring those charges. It was a fairly complicated piece of business, but Lawrence Salander signed the leases.

By the period ending May 15, 2006, Rosenberg & Co. claimed Salander was in arrears a total of $491,509.50. Salander did not actually vacate the building until November 3, 2006, when the business moved into its present location in New York City's historic Upper East Side at 22 East 71st Street between Fifth and Madison Avenues.

For the period between mid-May and November 3, 2006, Rosenberg claimed Salander owed either an additional $1,208,391.55 or, under a different formula, an additional $383,983.37.

In the complaint filed with the court on January 31, 2007, Rosenberg & Co. sought the amount of the earlier rent in arrears, $491,509.50, plus either $1,208,391.55 or $383,983.37, plus interest and legal fees.

—Roy Lennox

There's little we can tell you about the latest claim made against Salander. According to the *New York Sun*, New York City art collector and hedge fund manager Roy Lennox filed suit in New York Supreme Court on August 29, 2007, seeking some $14.6 million from Salander. Lennox did not yet have an attorney at the time this went to press, and no documents had been scanned into court records.

*Sun* reporter Sarah Portlock wrote that Lennox and Salander had a joint business in buying and selling art, and that "Lennox claims to have invested $3.6 million to the gallery but received only $1 million in returns, according to the suit." Portlock stated Salander referred to the suit as a "dispute between friends." That's the same response we got when we asked Larry Salander about a suit involving another person.

—Earl Davis

The Earl Davis suit has begun to resemble the Saundra Lane suit in that it too has reached an impasse. Davis had placed "hundreds" of works of art made by his late father, the prolific artist Stuart Davis, with Salander-O'Reilly Galleries and sought an accounting. He wanted to know where they were currently, how many had been sold, and what is due him.

On August 20, 2007, attorneys for Davis filed notice with the court that they would seek a motion for contempt and a preliminary injunction on Salander-O'Reilly Galleries for the failure to comply with stipulations and orders executed in July.

One of those orders was that unsold paintings were to be returned to Earl Davis. The galleries "represented (falsely) that there were no unsold works," alleged Davis's attorney Dean Nicyper, but he located some within the city limits. New York City's Babcock Galleries declared that it had seven of the Stuart Davis paintings (originally placed with Salander by Earl Davis) and returned them to Earl Davis on July 24.

Earl Davis also filed a document with the court on August 20, a declaration supporting Nicyper's motion. In it, he stated, "Defendants have declared they have a liquidity crisis... The Defendants' declaration is confirmed by the Defendants' repeated failed promises to pay me all money they owe. The proceeds from sales of my Works, however, are mine alone. Defendants have no rights to those funds. Given Defendants' liquidity crisis, the longer Defendants withhold payment of my sales proceeds trust funds, the greater the likelihood that Defendants will never deliver those trust funds to me."

Nicyper made several charges. He claimed that Salander had sold 73 Davis paintings for a total of $9,378,875. He stated that, "to avoid the collapse of their house of cards, Defendants have been using the cash they receive to pay other creditors." (In a supplementary document, Nicyper identified one of those creditors, stating, "Defendant Salander paid a contractor $374,388.05 for renovations to his New

---

(Auction) Skinner Discovery Auction (Bolton, MA)
Oct 18, Oct 19

(Show) Historic Yellow Springs Antiques Show (Chester Springs, PA)
Oct 19, Oct 20, Oct 21

(Auction) Philip Weiss Auctions (Oceanside, NY)
Oct 20

(Auction) Skinner Asian Works of Art at Auction (Boston, MA)
Oct 20

(Auction) Kimball Sterling Antique Cane Auction (Johnson City, TN)
Oct 20

(Auction) Whiteside Auctions On-Site Antiques Auction (Elkins Park, PA)
Oct 20

(Auction) Kimball M. Sterling Fall Antique Cane Auction (Full Free Catalog) (Johnson City, TN)
Oct 20

(Show) California Country Antique American Country & Folk Art Show (Los Altos, CA)
Oct 21

(Show) M.A.R.I.A.B. 3rd Annual Pioneer Valley Book & Ephemera Fair (Northampton, MA)
Oct 21

(Show) New Oxford, PA, One-Day Antique Show (New Oxford, PA)
Oct 21

(Show) The Fall Hartford Antiques Show (Hartford, CT)
Oct 21, Oct 22

(Auction) Auction House Heinze & Co. Rare and Important Books, Photographs & Autographs (Toronto, Ontario, Canada)
Oct 23

(Auction) John Moran Antique & Fine Art Auctioneers California & American Paintings (Pasadena, CA)
Oct 23

(Auction) Time & Again Auction Gallery Antique Estate Auctions (Linden, NJ)
Oct 23, Oct 28

(Show) Tailgate Antiques Show & Music Valley Antiques Market (Nashville, TN)
Oct 24, Oct 25, Oct 26, Oct 27

(Show) The San Francisco Fall Antiques Show (San Francisco, CA)
Oct 25, Oct 26, Oct 27, Oct 28

(Auction) Daniel Auction Company 27th Antique Advertising Auction (Sylvester, GA)
Oct 26, Oct 27

(Show) Minneapolis Institute of Arts 24th Annual Antiques Show & Sale (Minneapolis, MN)
Oct 26, Oct 27, Oct 28

(Auction) Northeast Auctions - Important New Hampshire Weekend Auction (Manchester, NH)
Oct 26, Oct 27, Oct 28

(Auction) Pook & Pook Inc. Auction (Downingtown, PA)
Oct 26

(Auction) Bonhams & Butterfields Fine European and American Furniture, Decorative Arts... Auction (San Francisco, CA)
Oct 29

(Auction) Lang's Sporting Collectables Auction (Boxborough, MA)
Nov 2, Nov 3

(Show) Lowery Enterprises Antiques & Design Show & Sale (Verona, NY)
Nov 3, Nov 4

(Auction) O'Leary Antiques Auction (Needham, MA)
Nov 3


Thurston Nichols American Antiques, LLC


Direct link to John D. Wahl Antiques


Frank & Barbara Pollack


Direct link to Uncle Tom's American Country Antiques


Ken, Ida, & Kate Manko American Folk Art


Antique67.com




Old South Antiques Ltd.


Leatherwood Antiques - Animal, Whimsical & Unusual Antiques


Direct link to John R. Snedden Ltd.


Wakefield-Scearce Galleries


Direct link to Griffiths Antiques


American Antiques Inc.


Dan Freeburg Antiques

The Cobbs, Auctioneers

York apartment between June 2004 and June 19, 2006.") Nicyper claimed Salander used sales of Davis's art to buy other art. In a statement that went to the heart of Davis's complaint against Salander, he charged, "Court filings in cases brought by sellers against the Gallery for its failure to pay in full for that artwork show that Defendants paid between $4,436,433.10 and $6,138,550.60, or more, to others over the last couple of years, while Defendants withheld from Plaintiff more than $9 million of Plaintiff's trust funds."

Nicyper asked for a motion for contempt and a preliminary injunction against Salander.

Salander's attorneys did not hesitate in posting their opposition to any such steps.

Chief Financial Officer Antonette Favuzza declared in a six-page document, signed on September 4, 2007, that Salander-O'Reilly Galleries had complied with the court's orders. She claimed that since she met with counsel on July 10, 2007, "I have taken all the steps necessary to ensure that Salander-O'Reilly fully comply with the Order." She assigned the task of retrieving all of the Davis works to employee Diane Buckley, who resigned from the firm on August 24. She then had Caitlin Fitzgerald take up where Buckley left off. They employed a phone log to identify persons called. They sent out 63 e-mails. Favuzza said she had no personal knowledge of any monies received by Salander since receipt of the order. Favuzza said they had complied with all the court's orders and supplied all the documents requested.

On that same date, September 4, the attorneys from the firm Winston & Strawn, LLP, representing Salander, filed a declaration in support of Salander's opposition to Davis's motion for contempt and for a preliminary injunction, a little over 200 pages of "Main Document and Exhibits."

It was followed by a 28-page memorandum of law (later superseded by a "Corrected Memorandum") supporting their opposition to the contempt motion. Edwin Larkin, the lead attorney, argued that his clients have not "sold or encumbered any of the Works" after receiving the Court's Order, have returned the Works in their possession," and "have sought the return of Works that have not sold and are not in their possession." In addition they have "produced documents relating to the categories set forth in the Order." Furthermore, Larkin maintained, Davis argued that he "has already been irreparably harmed by Defendant's alleged dissipation of sales proceeds received for the Works." If that is the case, Larkin argued, "Plaintiff's allegations therefore have no teeth. If dissipation of the proceeds has already occurred, and the order put in place now prevents further sales of the Works, then there can be no likelihood of irreparable harm."

On September 7, Larkin issued the following statement: "The Salander O'Reilly Gallery has had a long relationship with Mr. Davis and regrets that the matters in dispute have come to the point of litigation. The gallery denies the allegations set forth in the complaint and believes, as stated in its opposition papers, that Mr. Davis's motion for contempt and for a preliminary injunction is unwarranted and unnecessary. The Salander O'Reilly Gallery has been diligently complying with its obligations under the Stipulation and Order agreed to by the parties and will continue to do so until this matter is resolved."

As to when the Davis case will be tried, all we have to go on is an order coming out of a meeting held on August 21 with the various attorneys and Debra Freeman, United States Magistrate Judge. Judge Freeman issued an order to both parties to make all the initial disclosures required by law no later than September 4, to make any other motions amending the matter before October 26, and to complete all discovery issues before November 30. All expert discovery must be completed by December 31.

We sought comment from attorneys for parties in the major disputes. Only attorney Larkin returned our messages.

Login or Register to post a Comment

(Auction) Past Tyme Pleasures Absentee Advertising Auction (San Ramon, CA)
Nov 3

(Auction) Bertoia Auctions Happy Holiday Sale (Vineland, NJ)
Nov 9, Nov 10, Nov 11

(Auction) Stanton's Auctioneers and Realtors Annual Fall Music Machine Auction (Charlotte, MI)
Nov 16, Nov 17

(Show) Syracuse Thanksgiving Antique Show (Syracuse, NY)
Nov 24, Nov 25

(Auction) Bonhams American Paintings Auction (New York, NY)
Nov 28

(Auction) Bonhams & Butterfields California and American Paintings and Sculpture Auction (Los Angeles and San Francisco, CA)
Dec 10